**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 22-cv-5490 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| TWITTER, INC., BRET TAYLOR, PARAG | : **SECURITIES EXCHANGE ACT OF** |
| AGRAWAL, MIMI ALEMAYEHOU, EGON | : **1934** |
| DURBAN, MARTHA LANE FOX, OMID | : |
| KORDESTANI, DR. FEI-FEI LI, PATRICK | : **JURY TRIAL DEMANDED** |
| PICHETTE, and DAVID ROSENBLATT, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.  This is an action brought by Plaintiff against Twitter, Inc. ("Twitter or the "Company") and the members Twitter's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Twitter by affiliates of Elon R. Musk ("Musk").

2.  Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Revised Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on June 21, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the X Holdings II, Inc. ("Merger Sub"), a wholly-owned subsidiary of X Holdings I, Inc. ("Parent"), will merge with and into Twitter with Twitter surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on April 25, 2022 (the "Merger Agreement"), each Twitter stockholder will receive $54.20 in cash (the "Merger Consideration") for each Twitter share owned. Parent and Merger Sub are affiliates of Musk.

1. As discussed below, Defendants have asked Twitter's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors Goldman Sachs & Co. LLC ("Goldman Sachs") and J.P. Morgan Securities LLC ("J.P. Morgan") in support of their fairness opinions.

2. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

3. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Twitter's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

5. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

6. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company trades on the New York Stock Exchange, headquartered in this District, and the Company's proxy solicitor, Innisfree M&A Incorporated, is also headquartered in this District.

## PARTIES

7. Plaintiff is, and has been at all relevant times, the owner of Twitter stocks and has held such stocks since prior to the wrongs complained of herein.

8. Individual Defendant Bret Taylor has served as a member of the Board since July 2021 and is the Independent Board Chair of the Company.

9. Individual Defendant Parag Agrawal has served as a member of the Board since 2021 and is the Chief Executive Officer of the Company.

10. Individual Defendant Mimi Alemayehou has served as a member of the Board since 2021.

11. Individual Defendant Egon Durban has served as a member of the Board since March 2020.

12. Individual Defendant Martha Lane Fox has served as a member of the Board since April 2016.

13. Individual Defendant Omid Kordestani has served as a member of the Board since October 2015.

14. Individual Defendant Dr. Fei-Fei Li has served as a member of the Board since 2020.

15. Individual Defendant Patrick Pichette has served as a member of the Board since December 2017.

16. Individual Defendant David Rosenblatt has served as a member of the Board since December 2010.

17. Defendant Twitter is a Delaware corporation and maintains its principal offices at 1355 Market Street, Suite 900, San Francisco, California 94103. The Company's stock trades on the New York Stock Exchange under the symbol "TWTR."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A.   **The Proposed Transaction**

20. Twitter operates as a platform for public self-expression and conversation in real-time. The Company's primary product is Twitter, a platform that allows users to consume, create, distribute, and discover content. It also provides promoted products that enable advertisers to promote brands, products, and services, as well as enable advertisers to target an audience based on various factors, including who an account follows and actions taken on its platform, such as

Tweets created and engagement with Tweets. Its promoted products consist of promoted ads and Twitter Amplify, Follower Ads, and Twitter takeover. In addition, the Company offers monetization products for creators, including Tips to directly send small one-time payments on Twitter using various payment methods, including bitcoin; Super Follows, a paid monthly subscription, which includes bonus content, exclusive previews, and perks as a way to support and connect with creators on Twitter; and Ticketed Spaces to support creators on Twitter for their time and effort in hosting, speaking, and moderating the public conversation on Twitter Spaces. Further, it offers products for developers and data partners comprising Twitter Developer Platform, a platform that enables developers to build tools for people and businesses using its public application programming interface; and paid access to Twitter data for partners with commercial use cases. Twitter was founded in 2006 and is based in San Francisco, California.

21.     On April 25, 2022, the Company and Musk jointly announced the Proposed Transaction:

> SAN FRANCISCO, April 25, 2022 /PRNewswire/ -- Twitter, Inc. (NYSE: TWTR) today announced that it has entered into a definitive agreement to be acquired by an entity wholly owned by Elon Musk, for $54.20 per share in cash in a transaction valued at approximately $44 billion. Upon completion of the transaction, Twitter will become a privately held company.
>
> Under the terms of the agreement, Twitter stockholders will receive $54.20 in cash for each share of Twitter common stock that they own upon closing of the proposed transaction. The purchase price represents a 38% premium to Twitter's closing stock price on April 1, 2022, which was the last trading day before Mr. Musk disclosed his approximately 9% stake in Twitter.
>
> Bret Taylor, Twitter's Independent Board Chair, said, "The Twitter Board conducted a thoughtful and comprehensive process to assess Elon's proposal with a deliberate focus on value, certainty, and financing. The proposed transaction will deliver a substantial cash premium, and we believe it is the best path forward for Twitter's stockholders."

Parag Agrawal, Twitter's CEO, said, "Twitter has a purpose and relevance that impacts the entire world. Deeply proud of our teams and inspired by the work that has never been more important."

"Free speech is the bedrock of a functioning democracy, and Twitter is the digital town square where matters vital to the future of humanity are debated," said Mr. Musk. "I also want to make Twitter better than ever by enhancing the product with new features, making the algorithms open source to increase trust, defeating the spam bots, and authenticating all humans. Twitter has tremendous potential – I look forward to working with the company and the community of users to unlock it."

**Transaction Terms and Financing**

The transaction, which has been unanimously approved by the Twitter Board of Directors, is expected to close in 2022, subject to the approval of Twitter stockholders, the receipt of applicable regulatory approvals and the satisfaction of other customary closing conditions.

Mr. Musk has secured $25.5 billion of fully committed debt and margin loan financing and is providing an approximately $21.0 billion equity commitment. There are no financing conditions to the closing of the transaction.

For further information regarding all terms and conditions contained in the definitive transaction agreement, please see Twitter's Current Report on Form 8-K, which will be filed in connection with the transaction.

**First Quarter 2022 Earnings Results**

Twitter plans to release its first quarter fiscal year 2022 results before market open on April 28, 2022. In light of the pending transaction announced today, Twitter will not hold a corresponding conference call.

**Advisors**

Goldman Sachs & Co. LLC, J.P. Morgan, and Allen & Co. are serving as financial advisors to Twitter, and Wilson Sonsini Goodrich & Rosati, Professional Corporation and Simpson Thacher & Bartlett LLP are serving as legal counsel. Morgan Stanley is acting as lead financial advisor to Mr. Musk. BofA Securities and Barclays are also acting as financial advisors. Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal counsel.

\* \* \*

22. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Twitter's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

23. On June 21, 2022, Twitter filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24. The Proxy Statement fails to provide material information concerning financial projections by Twitter management and relied upon by the financial advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming views about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Twitter management provided to the Board

and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, and Unlevered Free Cash Flow, but fails to provide line items used to calculate the metrics ***and/or*** a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the

residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

28. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

29. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the forward EV/EBITDA multiples of 15.0x to 17.5x; (ii) Twitter's estimated total cash and cash equivalents and equity investments as of December 31, 2022, 2023, and 2024; (iii) Twitter's estimated total debt as of December 31, 2022, 2023, and 2024; (iv) the projected number of fully diluted outstanding shares of Twitter; (v) the inputs and assumptions underlying the illustrative discount rate of 11.4%; (vi) Twitter's cost of equity; and (vii) the company-specific inputs used for the application of CAPM.

30. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of illustrative terminal values for Twitter; (ii) the inputs and assumptions underlying the use of illustrative exit terminal year EV/EBITDA multiples ranging from 10.0x to 15.0x; (iii) the inputs and assumptions underlying the perpetuity growth rates ranging from 5.6% to 9.0%; (iv) the inputs and assumptions underlying the use of the range of discount rates of 10.0% to 12.0%; (v) the Company's weighted average cost of capital; (vi) the

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

number of fully-diluted outstanding shares of Twitter common stock as of March 31, 2022; (vii) Twitter's estimated total cash and cash equivalents and equity investments as of December 31, 2021; and (viii) the estimated net debt of Twitter as of December 31, 2021.

31. With respect to Goldman Sachs' *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected for the analysis.

32. With respect to Goldman Sachs' *Premia Paid Analysis*, the Proxy Statement fails to disclose the companies and the premiums of the transactions observed in the analysis.

33. With respect to Goldman Sachs' *Selected Public Company Comparables* analysis, the Proxy Statement fails to disclose the financial metrics for each company selected for the analysis.

34. With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Proxy Statement fails to disclose the financial metrics for each company selected for the analysis.

35. With respect to J.P. Morgan's *Selected Transaction Multiples Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected for the analysis.

36. With respect to J.P. Morgan's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of terminal values for Twitter; (ii) the inputs and assumptions underlying the terminal growth rates ranging from 6.0% to 7.0%; (iii) the inputs and assumptions underlying the use of the range of discount rates of 10.25% to 11.25%; and (iv) the present value of tax credits expected to be utilized by Twitter through fiscal year 2027, as calculated by J.P. Morgan.

37. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting

to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

41. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were

therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

42. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

43. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of Twitter within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Twitter, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement

filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Twitter, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Twitter, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

48. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by

their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 28, 2022     By:   **MELWANI & CHAN LLP**

*/s/ Gloria Kui Melwani*
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*